**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

EDDIE NELSON GARCIA,

       Petitioner,

vs.                                  No. CV 10-1151 LH/CG

BILLY MASSINGILL, WARDEN
Regional Correctional Center

       Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court upon Petitioner Eddie Nelson Garcia's *Petition for Writ of Habeas Corpus for Relief from Tribunal Court Conviction Pursuant to 25 U.S.C. § 1303*, ('Petition') (Doc. 1), and *Respondent's Response to Petitioner's Writ of Habeas Corpus* (Doc. 7). Petitioner claims that his arrest and conviction before the traditional Tribal Court are in violation of his rights as established in the Indian Civil Rights Act, 25 U.S.C. § 1302. The government has failed to meaningfully contest any of Petitioner's claims. Because the Response to the Petition is deficient such that it fails to show that Mr. Garcia's conviction and continued incarceration is not in violation of his Due Process rights, this Court recommends that the Petition be **GRANTED**.

    **I.**      **Factual and Procedural Background**

Petitioner Eddie Garcia is an enrolled member of the Pueblo of Kewa Indian Tribe, which is a recognized Indian Tribe in New Mexico. *See* 74 F.R. 40218-02; (Doc. 1 at 1).[1] On August 3, 2010, Mr. Garcia was at his house when a woman named Brigid Calabaza

---

[1] The Pueblo of Kewa is listed in the Federal Regulations under its former name, the Pueblo of Santo Domingo. 74 F.R. 40218-02; (Doc. 1 at 1).

came over. (Doc. 1 at 2).[2] Ms. Calabaza was spending time with Mr. Garcia at his house

when Office Tenorio, a Tribal Officer, entered Mr. Garcia's house without authorization or

permission and proceeded to arrest Mr. Garcia and Ms. Calabaza. (*Id.*). Mr. Garcia states

that Officer Tenorio used to have a romantic relationship with Ms. Calabaza. (*Id.*). Mr.

Garcia was held in the Sandoval County Jail for three days, after which Officer Tenorio

transported Mr. Garcia back to the Pueblo. (*Id.*). Officer Tenorio told Mr. Garcia that he had

to perform two days of community service, which Mr. Garcia did. (*Id.*). After completing the

community service ordered by Officer Tenorio, Mr. Garcia was brought before the Tribal

Court on August 9. (*Id.*). Officer Tenorio sat as a member of the Tribal Court. (*Id.*). At the

hearing the Court imposed an additional five days of community service and a $180 fine.

(*Id.*). After Mr. Garcia complained that he had already  completed the community service

required by Officer Tenorio, the Court added an additional five days of community service.

(*Id.*). Mr. Garcia completed all of the community service required by the Tribal Court.

On August 19, 2010, Ms. Calabaza again approached Mr. Garcia and asked him to

come visit her at her cousin's house. (*Id.* at 3). Mr. Garcia went over and Ms. Calabaza told

him that Officer Tenorio had filed a restraining order against Mr. Garcia in her name. (*Id.*).

Ms. Calabaza stated that she never wanted a restraining order against Mr. Garcia, and that

she had not authorized Officer Tenorio to file one in her name. (*Id.*). While they were

talking, Officer Tenorio came into the cousin's house without authorization or permission

and proceeded to physically beat Mr. Garcia. (*Id.*). Officers from the Board of Indian Affairs

('BIA') then came to the house and arrested Mr. Garcia and took him to a local hospital to

---

[2] Mr. Garcia's Petition refers to Ms. Calabaza solely as 'B.C.' However, tribal court
documents attached to the Petition name her as Brigid Calabaza. (*See, e.g.*, Doc. 1-2 at 10)

treat the wounds caused by Officer Tenorio's beating. (*Id.*; Doc. 1-2 at 2).

 Mr. Garcia was again held at the Sandoval County Jail for several days before he was brought before the Tribal Court. Mr. Garcia was presented with a sheet charging him with violating his probation and the restraining order. (Doc. 1 at 3; Doc. 1-2 at 4). Mr. Garcia was also charged with a liquor violation and with being intoxicated. (*Id.*). Mr. Garcia claims that a sentence of incarceration was already written on the charging document and that it had already been signed by the Tribal Governor. (*Id.*). Mr. Garcia was told to sign the document and to enter a plea. (Doc. 1 at 3). Mr. Garcia protested to the tribunal that the restraining order had been filled out by Officer Tenorio, not Ms. Calabaza, and Mr. Garcia claims that Officer Tenorio admitted this to the Tribal Court. (*Id.* at 4). Despite Officer Tenorio's admission that Ms. Calabaza had not sought the restraining order, no change was made to Mr. Garcia's charging document. (*Id.*). Mr. Garcia was not afforded an opportunity to confront witnesses while he was before the Court, he was not given an opportunity to offer a defense, and he was not advised of his right to retain counsel. (*Id.* at 7-8). Mr. Garcia  pled guilty because he feared that, should he object, his sentence would be arbitrarily increased, just as it was during his August 9 hearing before the Tribal Court. (*Id.* at 7). Mr. Garcia was then sentenced to 364 days of confinement at the Regional Correction Center ('RCC') in Albuquerque, where he continues to be held. (*Id.* at 4; Doc. 1-2 at 6).

 Mr. Garcia obtained counsel through the Southwest Indian Law Clinic in October of 2010, and on December 2, 2010, he filed a Motion to Reconsider Sentence with the Tribal Court. (Doc. 1 at 5; Doc. 1-2 at 12-19). Mr. Garcia then filed the instant habeas Petition on December 3, 2010. (Doc. 1). Petitioner states that he does not expect the Tribal Court to

respond to his Motion to Reconsider Sentence. (*Id.* at 5).

In both his Motion to Reconsider Sentence and in this Petition, Mr. Garcia alleges that Officer Tenorio and the Tribal Court violated the Indian Civil Rights Act. *See* 25 U.S.C. § 1302. Specifically, he alleges that Officer Tenorio's entry into his house violated his right to be secure in his person against unreasonable searches and seizures. (Doc. 1 at 6); 25 U.S.C. § 1302(2). He claims that his right to confront witnesses, his right to defend himself against the charges, his right to counsel, and his right to a jury trial were all violated when he appeared before the Tribal Court. (Doc. 1 at 7-9); 25 U.S.C. §§ 1302(6), (8), (10). Mr. Garcia additionally claims that the imposition of probation on August 9, after he had already finished the community service ordered on August 3, constitutes an illegal ex post facto sentence. (Doc. 1 at 8); 25 U.S.C. § 1302(9). Accordingly, Mr. Garcia contends that his continued incarceration is unconstitutional. (Doc. 1 at 10).

On December 8, 2010, this Court determined that the Petition was not subject to summary dismissal, and the Court ordered Billy Massingill, the Warden of the RCC, to answer Mr. Garcia's Petition. (Doc. 4 at 1). Pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), this Court also dismissed the chief executive officer of the GEO Group, the Governor of the Kewa Pueblo, and Partricia Broken Leg-Brill - the Bureau of Indian Affairs corrections specialist - as Respondents in this matter. (*Id.*). The Court directed the Clerk of the Court to substitute Warden Massingill as the sole Respondent since he is currently Mr. Garcia's custodian (*Id.*). Copies of the Petition and the Court's Order were sent to Warden Massingill, the CEO of GEO Group, the Governor of the Kewa Pueblo, and Patricia Broken Leg-Brill. (*Id.* at 2). Crucially, neither the Governor of the Kewa Pueblo nor Ms. Broken Leg-Brill responded to the Court's order. They did not seek to be reinstated as

4

Respondents, nor did they take any position as to the validity of Mr. Garcia's conviction and sentence. No members of the Kewa Pueblo or the BIA have filed any notice or document with regard to Mr. Garcia's Petition.

Warden Massingill filed his Answer to the Petition on December 8, 2010. (Doc. 7). In his three-page Answer, Warden Massingill states that he has no information regarding the circumstances of Mr. Garcia's arrest or conviction and that he takes no position on the propriety of Mr. Garcia's continued incarceration. (*Id.* at 1-2).

> Respondent is without sufficient information upon which to form a belief as to the truth or falsity of the allegations contained within that Portion of the Petition titled "Factual and Procedural Background" . . . Respondent is without sufficient information upon which to form a belief as to the truth or falsity of the respective claims and associated allegations set forth within . . . the Petition . . . Respondent is without sufficient information up on which to admit or deny Petitioner's entitled to any relief he proclaims to seek in the Conclusion section of his Petition.
>
> ********
>
> Respondent has no involvement in Petitioner's prosecution or conviction. Moreover, Respondent has no information at his disposal to specifically comment upon the propriety of Petitioner's prosecution and conviction. Rather, Respondent's sole role was and is to incarcerate Petitioner in accordance with the Tribal Court Order.

(*Id.*). Warden Massingill therefore "respectfully prays that the Court independently consider the propriety of all aspects of the Petition and *sua sponte* determine the relief, if any, deemed necessary and proper." (*Id.* at 2).

In his Answer, Warden Massingill states that he conferred with officials from both the BIA and the Pueblo of Kewa and that both the BIA and Pueblo of Kewa informed him that "they have no intention of responding to the Petition." (*Id.*). Warden Massingill attached copies of electronic correspondence between Respondent's counsel and a Kewa official,

demonstrating that neither the BIA nor the Kewa Pueblo would seek to contest Mr. Garcia's

Petition. (*See* Doc. 7-2 at 1)

> [P]er our discussion today, I understand that you have discussed this matter
> with Governor Tortalita [of the Pueblo of Kewa], and the Pueblo of Kewa has
> determined that it will not enter an appearance in the above-referenced
> matter, nor will it enter an appearance for Warden Massingill, in order to
> formally respond to the Petition for Writ of Habeas Corpus filed on behalf of
> Eddie Nelson Garcia. In sum, the official determination of the Pueblo of
> Kewa, per Governor Tortalita, is that the Pueblo will in no manner pursue this
> matter . . . I have also been advised by Keith Elliott that the BIA will not take
> action to contest Mr. Garcia's Petition for Writ of Habeas Corpus.

(*Id.*).

## II.   **Analysis**

### A.   **Default Judgments in Habeas Proceedings**

The state's answer in federal habeas corpus proceedings plays an important role

in ensuring the prompt and just resolution of such petitions. *See, e.g.*,  Advisory Committee

Note to Rule 5 of the Rules Governing § 2254 Cases ("The Answer plays an obviously

important role in a habeas proceeding . . . it permits the court and the parties to uncover

quickly the disputed issues; it may reveal to the petitioner's attorney grounds for release

that the petitioner did not know; and it may demonstrate that the petitioner's claim is wholly

without merit.") (quoting *Developments in the Law - Federal Habeas Corpus*, 83  Harv. L.

Rev. 1083, 1178 (1970)). This is so because it is the state which has the greatest interest

in defending such convictions, and it is the state which has both the legal expertise and

access to the record to ensure that a petitioner's claims are properly developed. *Id.* ("The

attorney general has both the legal expertise and access to the record and thus is in a

much better position to inform the court . . ."). The state's response to habeas petitions is

of such importance that federal courts are generally discouraged from taking substantive

6

actions on such petitions absent the state's response. *See, e.g.*, *Williams v. Kullman*, 722 F.2d 1048, 1050-51 (2d Cir. 1983); *United States ex rel Jones v. Franzen*, 676 F.2d 261, 267 (7th Cir. 1982).

Because of the importance of the state's response, federal courts have been faced with the question of whether a default judgment is appropriate when the state fails or refuses to file a response to a petition. Several Circuit Courts of Appeals have suggested that the proper response in such situations is for the court to inspect and rule on the petition as if a response had been tendered, while allowing for sanctions against individual attorneys. *See, e.g.*, *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987); *Bermudez v. Reid*, 733 F.2d 18, 22 (2d Cir. 1984). Some courts have allowed for sanctions against the state for failure to respond, including deeming procedural defenses waived. *See, e.g.*, *Bleitner v. Welborn*, 15 F.3d 652, 653-54 (7th Cir. 1994); *see also* RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE 652-53 (1998).

The Seventh Circuit considered this question and held that, while the state's failure to answer a habeas petition should not always result in a default judgment, when the state is guilty of "long and inadequately explained delays, it may be presumed that the petitioner is being illegally confined." *Ruiz v. Canady*, 660 F.2d 337, 340 (7th Cir. 1981); *see also Troglin v. Clanon*, 378 F.Supp. 273, 280 (N.D.Cal. 1974). The Seventh Circuit held that lengthy delays would constitute a violation of a petitioner's due process rights and that a default judgment in favor of a petitioner would be appropriate in such situations. *Ruiz*, 660 F.2d at 340-41.

The Tenth Circuit considered this same question in *Stines v. Martin*, 849 F.2d 1323, 1324-35 (10th Cir. 1988). In that case the petitioner filed a habeas petition under 28 U.S.C.

7

§ 2241 and the government failed to respond by the required time. *Id.* at 1324. The government did file an answer shortly thereafter, but the district judge struck the late answer and deemed all of the petitioner's allegations to be admitted by the government. *Id.* The case was appealed to the Tenth Circuit, where the Court considered the permissibility of default judgments in habeas proceedings. While noting that many Circuits disfavor the use of default judgments in habeas cases, the Tenth Circuit quoted *Ruiz* and noted the Seventh Circuit's conclusion that certain delays are so egregious that they amount to a due process violation. *Id.*

The Tenth Circuit ultimately reversed the district court, holding that a default judgment was inappropriate in that case because the delay in that case - merely a few weeks - was relatively minor. *Id.* at 1324-25. However, the court suggested that a substantial delay might entitle the petitioner to a default judgment. *Id.* At 1324-25 ("We need not decide whether a district court may ever grant a default judgment in a habeas corpus proceeding if there is a serious delay, because the delay in this case was minor . . . [t]he court was not placed in the position of either delaying the proceedings or making a decision without the benefit of Government briefing."). The Tenth Circuit has since reaffirmed that lengthy delays in responding to a habeas petition may warrant a default judgment in petitioner's favor. *United States v. Collins*, 172 F.App'x 242, 243 (10th Cir. 2006) (unpublished) ("[T]his court has held that a default judgment may be appropriate in a habeas case where the delay itself rises to the level of a due process violation.") (quoting *Stines*, 849 F.2d at 1324).

### B.   Default Judgment Is Appropriate in Mr. Garcia's Case

To be sure, Mr. Garcia's case is not quite on all fours with *Stines v. Martin* or *Ruiz*

8

*v. Canady*. In this case, an answer was timely provided by the Respondent, whereas in *Stines* and *Ruiz* the government failed to file a timely answer. Nevertheless, the holdings of *Stines* and *Ruiz* are applicable to this case. While Warden Massingill did file an answer, the answer in no way addressed the substance of Mr. Garcia's Petition. The Warden admitted that he "has no involvement in Petitioner's prosecution or conviction" and that he "has no information at his disposal to specifically comment upon the propriety of Petitioner's prosecution and conviction." (Doc. 7 at 2). The Warden's answer is essentially no answer at all.

The only parties who have an interest in defending Mr. Garcia's conviction and who have access to the information needed to defend the conviction are the BIA and the Pueblo of Kewa. Both parties were served with copies of the Petition, and both parties have had ample opportunity to contest their removal as Respondents from the proceedings or to oppose Mr. Garcia's Petition. (*See* Doc. 4). Neither the BIA nor the Governor of the Pueblo of Kewa have done so. Indeed, Warden Massingill's counsel spoke with officials from the BIA and with representatives of Governor Tortalita of the Pueblo of Kewa, and both parties explicitly declined to enter an appearance or take a position on his Petition. (Doc. 7-2 at 1 ("In sum, the official determination of the Pueblo of Kewa, per Governor Tortalita, is that the Pueblo will in no manner pursue this matter . . . I have also been advised by Keith Elliott that the BIA will not take action to contest Mr. Garcia's Petition for Writ of Habeas Corpus.")).

Because there is no likelihood that the BIA or the Pueblo of Kewa will answer Mr. Garcia's Petition or that they will take any action to oppose it, the situation is analogous to one where the government simply fails to respond to a prisoner's petition. This is precisely

the type of due process violation which the Tenth Circuit has held should entitle a petitioner to a default judgment. *Stines*, 849 F.2d at 1324-25. Federal courts must strive to preserve the writ of habeas corpus as a "swift and imperative remedy in all cases of illegal restraint or confinement." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994) (quoting *Braden v. 30th Judicial Cir. Ct. Of Ky.*, 410 U.S. 484, 490 (1973). In situations where the government has failed to answer and has in fact stated that it has no intention of contesting the Petition, a failure to grant the Petition would be an abdication of this court's responsibility. *Ruiz*, 660 F.2d at 340 (holding that when the government needlessly delays or fails to respond to a habeas petition, "the petitioner's due process rights would be denied, and "[t]he writ of habeas corpus . . . [would be] reduced to a sham if the  . . . courts did not act within a reasonable time."") (citation omitted). Therefore, this Court will recommend that Mr. Garcia's Petition be granted. Out of an abundance of caution, copies of the Proposed Findings and Recommended Disposition will be sent to the BIA and the Pueblo of Kewa should they wish to object.

### III. <u>Recommendation</u>

Because the government has failed to meaningfully answer or oppose Mr. Garcia's Petition, this Court **HEREBY RECOMMENDS** that Eddie Nelson Garcia's *Petition for Writ of Habeas Corpus for Relief from Tribunal Court Conviction Pursuant to 25 U.S.C. § 1303* (Doc. 1) be **GRANTED.**

The Court **FURTHER RECOMMENDS** that Warden Billy Massingill be ordered to release Mr. Garcia from the custody of the Regional Correction Center in Albuquerque.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

11